# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVAN M. BEARD, : | |
| : | |
| Plaintiff : | |
| : | CIVIL NO. 15-2395 |
| v. : | |
| : | |
| CAROLYN W. COLVIN, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant : | |

## REPORT AND RECOMMENDATION

**RICHARD A. LLORET**                                                               **February 26, 2016**
**U.S. MAGISTRATE JUDGE**

      Evan Beard ("Beard") alleges the Administrative Law Judge ("ALJ") erred in denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. *See* Brief in Support of Plaintiff's Motion for Summary Judgment ("Pl. Br") at 1. Specifically, Beard argues that 1) the ALJ's evaluation of medical opinions was not based on substantial evidence and 2) the ALJ improperly rejected the claimant's testimony.

      After careful review of the record and briefs, I believe the ALJ erred in one respect, and that remand is appropriate. I respectfully recommend the claimant's request for review be granted.

## PROCEDURAL HISTORY

      Beard filed for DIB with an effective date of June 12, 2012. R. 108. The claim was denied on September 12, 2012. R. 78. Beard requested a hearing before ALJ Frederick Timm on October 1, 2013. R. 30. The ALJ issued an unfavorable decision on March 14,

2014. R. 29.

Applying the five-step sequential analysis,[1] the ALJ found Beard had not engaged in substantial gainful activity since January 20, 2012. R. 19. He suffered from bipolar disorder and substance abuse. R. 20. (citing 20 C.F.R. § 404.1520(c)). Since the alleged onset date, the claimant did not have an impairment or combination of impairments that met or equaled the severity of a Listed impairment *Id.* The ALJ also found that Beard had the residual functional capacity to perform

> A range of work at all exertional levels but with the following non-exertional limitations: unskilled tasks; goal-oriented rather than production-paced tasks; no significant interaction with the general public; occasional interaction with supervisors and co-workers; in a stable workplace with few if any changes of setting, processes, or tools.

R. 21. The ALJ concluded that there were a significant number of jobs in the national economy that the claimant could work. R. 25-26. These included positions as a cleaner (DOT 323.687-010), stores laborer (DOT 922.687-058), and mail clerk (DOT 209.687-026). R. 26.

The Appeals Council denied Beard's request for review on April 13, 2015. R. 1-3. He brings this civil action for judicial review through 42 U.S.C. § 405(g).

---

[1] For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit the claimant's ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a Residual Functional Capacity ("RFC") to perform work with the claimant's limitations and can return to the claimant's previous work with that RFC; and (5) can perform any other work existing in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

2

## **FACTUAL HISTORY**

At the time of the administrative hearing before the ALJ, Beard was 31 years-old. Beard was not represented by an attorney. R. 31. He is a college graduate who spent time as a retail associate and as a chemist. R. 44-45. He currently lives in a cabin in the Poconos, but before that lived in different apartments and in transitional housing. R. 36-37. He frequently sees a psychiatrist who prescribes him medication to deal with some of his mental impairments. R. 38. He's been sober since 2012 and tries to maintain a healthy lifestyle in the Poconos, by taking walks and reading. R. 42. Beard still has lingering issues with bipolar disorder, including hearing voices in his head. R. 43. These issues, which went untreated for a number of years, culminated in an incident where he "went insane and went into emergency services." R. 44.

Beard's struggle with mental illness began when he was in his early twenties, a few months after graduating from Drexel University with a chemistry degree. R. 46. He testified that this was around the time "the voices first started happening, and my grandiose, delusional thoughts" appeared. *Id.* Coupled with his issues with substance abuse, Beard landed in the Horsham Clinic and received treatment. R. 47. He worked for his father's company in 2011 where he earned some money, along with a $12,000 severance payment in early 2012 before going into another treatment program. R. 48-49. Beard has tried to get employment as a chemist with other companies, but ran into difficulty because he did not stick with any of his previous jobs. R. 54. A position at a local Dollar Tree as a stocker "didn't go so well." *Id.*

The vocational expert Beth Kelley testified. Based on Beard's testimony, the VE

3

opined that he could work in a number of jobs, "but limited to unskilled tasks, limited to goal-oriented rather than production-paced tasks, no significant interaction with the general public, and no more than occasional interaction with supervisors and coworkers, and does require a stable workplace, meaning few if any changes of setting, processes, and tools" R. 52-53. She listed a number of jobs including a cleaner, stock worker, or mail clerk as positions that Beard could work in the national economy. R. 53.

## **DISCUSSION**

A claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009). In reviewing an ALJ's disability determination, I must accept all the ALJ's fact findings if supported by substantial evidence or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); see also 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, the ALJ's legal conclusions and application of legal principles are subject to "plenary review." See *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006).

### A. The ALJ's assessment of the medical opinions.

A treating source's opinion is entitled to controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.[2]  *See* 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996).  An opinion may be rejected "on the basis of contradictory medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *see Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (contradictory opinions by state agency physicians was a sufficient basis for refusing to give a treating physician's conclusory opinion controlling weight); *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (ALJ "clearly explained" why she gave greater weight to the opinion of a medical consultant than to treating physician). So too may an opinion be rejected if there is insufficient clinical data, *see Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985), or if the opinion is contradicted by the physician's own treating notes or the patient's activities of daily living. *See Smith v. Astrue*, 359 F. App'x 313, 316-17 (3d Cir. 2009). The opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (*citing Newhouse*, 753 F.2d at 286).

---

[2] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship with the patient." 20 C.F.R. § 404.1502.  A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." *Id.*

5

Where a treating source's opinion is not given controlling weight, the ALJ must determine what weight to give the relevant medical sources by considering factors such as the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization. 20 C.F.R. § 404.1527(c). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Opinions from non-treating sources who have examined a claimant do not receive as much consideration as a treating source's opinions, but warrant more weight than the opinion of non-examining medical sources.[3] *See* 20 C.F.R. § 416.927(c)(1); *Chandler*, 667 F.3d at 361; *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 257 (3d Cir. 2008). Testimony from a non-examining source also must be considered by the ALJ, but is not entitled to deference.[4] 20 C.F.R. § 416.927(e); SSR 96-6p, 1996 WL 374180 at *2. It is error to "credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the

---

[3] Non-treating sources are usually doctors who have examined the claimant, but not in the context of an ongoing treatment relationship. 20 C.F.R. § 416.902. A source is non-treating if a claimant visits a doctor solely to obtain a report in support of his or her claim. *Id.*

[4] A non-examining source is an acceptable medical source who has not examined the claimant, but who provides a medical opinion of the case. 20 C.F.R. § 416.902.

claimant's treating physician." *Franklin v. Barnhart*, No. 05-2215, 2006 WL 1686692, at *11 (E.D. Pa. June 13, 2006) (quoting *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986)).

When deciding that a treating source's opinion is not entitled to controlling weight, the ALJ must evaluate the opinion by considering factors such as the length of the treatment relationship, the frequency of visits, the nature and extent of the treatment relationship, whether the source has supported his or her opinion with medical evidence, and whether the opinion is consistent with the medical record and the medical source's specialization. 20 C.F.R. 416.927(c)(2); *see also* SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *4.

"While the ALJ is, of course, not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 Fed. App'x. 163, 168 (3d Cir. 2003) (not precedential) (quoting *Kent v. Schweiker,* 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (alteration in original, internal quotations omitted).

In this case, Beard argues that the ALJ erred regarding the opinions of Dr. Mary Oskowski, M.D. and Dr. Grant Coyle, Ph.D. *See* Pl. Br. at 2-7. The Commissioner argues that these medical opinions were properly evaluated. *See* Def. Br. at 3. I will analyze each medical opinion below.

1. *Opinion of Dr. Oskowski, M.D.*

The ALJ assigned Dr. Oskowski's opinion little weight. He wrote that "[a]lthough a

7

treating specialist, I give little weight to Dr. Oskowski's opinion because it is conclusory without function-by-function limitations, she does not discuss the influence of the claimant's history of substance abuse, the only visit with Dr. Oskowski in the record does not include abnormal findings to support precluding full-time work activity, and Dr. Oskowski's colleague assigned a GAF [score] of moderate symptoms that does not support precluding full-time work activity." R. 23. The claimant criticizes the ALJ's reasons for giving little weight to Dr. Oskowski's opinion. *See* Pl. Br. at 2-6. The claimant takes issue first with the ALJ's finding that Dr. Oskowski's opinion as "conclusory, without function-by-function limitations." *Id.* at 3. My review of Dr. Oskowski's opinion satisfies me that the ALJ's criticism is just. Dr. Oskowski's opinion, reads as follows:

> [The claimant] was unable to work in any capacity from March 2012 (and perhaps earlier) and just recently has been able to work as a Stocking Clerk/Laborer for 8 hours per week. He may be able to increase this to 16 hours per week eventually, but due to being disabled by his Bipolar Disorder (with history of severe symptoms) I do not think he is capable of working more than this. He should be granted full benefits.

*See* Pl. Br. at 2 (quoting R. 233).

      Dr. Oskowski's opinion amounts to little more than a statement that the claimant is disabled and should receive benefits. An ALJ is not bound to accept a treating physician's *diktat* on the issue of disability so long as he or she weighs that information against other evidence and provides a reasonable explanation. *See Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981). The claimant argues that just because "medical opinion evidence is on an issue reserved to the Commissioner is not a reason to reject it." *See* Pl. Br. at 3 (citing SSR 96-5p). The argument misses the point. The ALJ refused to assign

8

much weight to Dr. Oskowski's opinion because it was conclusory and supplied no function-by-function analysis. The claimant acknowledges, as he must, that the ALJ's statement of the law is correct: "[t]he issue of whether an individual is 'disabled' is an administrative finding reserved to the Commissioner." *Id.* (citing R. 23). The ALJ's point in making the statement was to emphasize that it is not enough for a physician to simply say that the claimant is disabled.

Beard also makes the argument that the ALJ should have re-contacted Dr. Oskowski to clarify parts of her report. Pl. Br. at 3. I disagree. The ALJ was not required to "re-contact" Dr. Oskowski for clarification. That is only necessary if the ALJ cannot reach a definitive conclusion if a claimant is disabled or not. *See* 20 C.F.R. § 404.1520b(c)(1) ("We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence."). The regulations permit this clarification at the discretion of the ALJ. *See id.* § 404.1520b. The ALJ had enough evidence to make the determination and saw no reason to clarify the statements from Dr. Oskowski.

The claimant also argues that the ALJ erred by stating that Dr. Oskowski failed to "discuss the influence of the claimant's history of substance abuse . . ." R. 23; Pl. Br. at 4. Claimant says that "it is not clear what point the ALJ is trying to make." *Id.* The criticism is perhaps fair, but in context the point seems to be that Dr. Oskowski's failure to mention or discuss the patient's history of substance abuse increased the ALJ's conviction that the doctor had not carefully analyzed the details of Beard's medical

9

history and his capacity to function at work.

Claimant points out that a previous patient note, by another health care provider working for the same treatment center, contained a history detailing the claimant's drug abuse. *See* Pl Br. at 4. Beard argues that "it would not be reasonable to suggest that she did not read it when she assumed responsibility for Plaintiff's treatment." Pl. Br. at 5. But the ALJ simply pointed out there was no discussion of Beard's substance abuse in Dr. Oskowski's opinion. The ALJ's criticism, fairly read, is not that Dr. Oskowski did not know of the history of substance abuse. It is that Dr. Oskowski gave the ALJ no idea what she made of that history when she rendered an oracular pronouncement that Beard was "disabled" and "should be granted full benefits." R. 23 (ALJ's opinion); 233 (Dr. Oskowski's report). Claimant's reading of the ALJ's opinion would, in the end, have me presume that the ALJ, by mentioning that Dr. Oskowski's report fails to discuss claimant's history, committed error by himself improperly considering the effects of plaintiff's substance abuse. *See* Pl. Br. at 5. This is not a reasonable interpretation of the ALJ's opinion.

The Commissioner's writes that the "ALJ properly noted that Dr. Oskowski's opinion does not make reference to [Beard's] prior history of substance of abuse, *or note that his symptoms were more stable after he become sober in April 2012, and in this way is inconsistent with the record as a whole.*" Def. Br. at 5 (emphasis supplied). Actually, the ALJ does not criticize Dr. Oskowski's opinion for failing to note that Beard was more stable after he became sober in April 2012. R. 23. The ALJ's discussion of Beard's stability is contained in a lengthy and convincing analysis of psychiatric

10

treatment with Dr. Maany, his treating physician for two to three years, both before and after Beard went into "Project Transitions," where he briefly treated with Dr. Oskowski. R. 23-24 (ALJ's opinion); 38-39 (claimant's testimony). The ALJ supplies a number of examples of Beard's stability after his treatment at Project Transitions, based on Dr. Maany's treatment notes. R. 23-24. This detailed longitudinal history of relative stability stands in marked contrast to the cryptic opinion of Dr. Oskowski, based on a few patient examinations while Beard was treating at Project Transitions for a few months.[5]

### 2. Dr. Croyle's Report

The ALJ gave great weight to consultant Dr. Croyle's medical opinion. R. 24. Beard writes that the doctor's findings "were more restrictive than the ALJ's assessment of Plaintiff's residual functional capacity." Pl. Br. at 7. Dr. Croyle limited Beard to very short and simple instructions but did not limit him only to "unskilled tasks." *Id.* at 8. Beard notes that "many unskilled occupations require an individual to be capable of doing more than 'carrying out very short and simple instructions.'" *Id.* The argument is that the reasoning level required for the jobs identified by the vocational expert, which established the basis for the ALJ's residual functional capacity determination, exceeds Beard's reasoning level. *Id.* at 9-10.

The Commissioner points out that she relies not on reasoning level, but rather an occupation-specific vocational preparation time ("SVP") to classify a claimant's skill

---

[5] Beard makes an argument about his GAF score of 5,7 which he writes "is not inconsistent with disability." *See* Pl. Br. at 6. I agree with the Commissioner that in this jurisdiction, GAF scores of 50 and lower are not dispositive of a disability finding. *See*

level. Def. Br. at 6 (citing SSR 00-4p, 2000 WL 1898704, at *3 (2000) (noting that unskilled work corresponds with an SVP of 1-2)). Each of the jobs identified by the VE represents an SVP of 2. *Id.* (citations omitted). A reasoning level of two (which requires detailed, but uninvolved written or oral instructions) does not preclude an RFC limiting a claimant to simple, routine, repetitive work. *Id.* at 7 (citing *Mooney v. Barnhart*, 91 F. App'x 210 (3d Cir. 2004)). While it is true that the Commissioner uses SVP and not reasoning level to classify a claimant's skill level, the point of the plaintiff's argument is that his reasoning level is not adequate for many unskilled jobs, however they are classified.

In his reply brief, Beard notes that "Dr. Croyle did not limit Plaintiff merely to simple tasks or simple instructions. He found Plaintiff 'able to carry out *very short* and simple instructions." *See* Pl. Rep. Br. at 7 (citing R. 73) (alteration in original). A limitation to very short and simple instructions, argues Beard, is different from limitations to short and simple instructions. *Id.*

Reviewing Dr. Croyle's records, he clearly stated that the claimant is only able to carry out "very short and simple instructions. The claimant would be able to maintain regular attendance and be punctual." R. 73. There were no restrictions on Beard's abilities, "as long as he remains in recovery and compliant with medication." R. 74. The plaintiff makes a persuasive argument that a restriction to "very short and simple instructions" is consistent with a reasoning level of 1: "Apply commonsense

---

*e.g.*, *Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d. Cir. 2009). A GAF score of 57 certainly does not compel a finding of disability.

12

understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on a job." Pl. Br. at 9 (quoting DOT, page 1011). Plaintiff also points out that a level 2 reasoning development requirement calls for a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* As plaintiff argues, "[d]etailed instructions are not very short and simple." *Id.* The jobs identified by the VE in the record have reasoning levels of 2 or 3. *Id.* at 9-10.

In *Zirnsak v. Colvin*, 777 F.3d 607, 617-18 (3d Cir. 2014) the Court of Appeals noted that "[t]here is a split of authority as to whether an inherent conflict exists between a job requiring level 3 reasoning and finding that a claimant should be limited to simple, routine tasks and unskilled work." In *Zirnsak* the plaintiff urged the court to adopt a *per se* rule that a claimant limited to simple, routine tasks and unskilled work could not perform jobs requiring level 3 reasoning. *Id.*, at 617. The court refused to do so, and instead required a case specific assessment of whether the issue required remand. *Id.*

The court in *Zirnsak* identified three factors for consideration: 1) whether plaintiff argues that he is incapable of performing the jobs identified, 2) whether potential inconsistencies between the jobs identified and the reasoning levels for those jobs[6] were brought up at the hearing before the ALJ, and 3) whether the occupations

---

[6] In *Zirnsak* the potential inconsistencies were raised through the DOT descriptions of reasoning levels applicable to the jobs identified by the VE. *See Zirnsak*, 777 F.3d at 617. Here the issue is raised through a different type of evidence, that is, Dr. Croyle's opinion that plaintiff could follow "very short" instructions. *Zirnsak* makes it clear that the issue

mentioned by the VE during testimony were meant to be an exhaustive list, or simply examples. *Id.*

Applying these factors, I reluctantly conclude the matter should be remanded for additional findings by the ALJ. In *Zirnsak* the plaintiff did not seriously argue that she was incapable of performing the jobs the VE had identified, only that the hypothetical question to the VE did not include her full range of limitations. *See id* at 614 (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). Here, the plaintiff forthrightly argues that he is incapable of performing jobs requiring anything more than level 1 reasoning development requirement. Pl. Br. at 9-10. Given the language Dr. Croyle used, the argument does not seem frivolous.

Turning to the second *Zirnsak* factor, the plaintiff did not flag the issue at the hearing before the ALJ. In *Zirnsak*, the plaintiff was represented by counsel before the ALJ. *See* 777 F.3d at 608. Competent counsel can be depended upon to argue issues that have merit, and dispense with those that don't. A failure of counsel to raise the issue at the hearing is a helpful way of diagnosing whether the issue had any chance of success. By contrast, an unrepresented party cannot be expected to have the acumen to spot and effectively argue this particular issue, even if it had obvious merit. In addition, an ALJ has a special obligation, in cases involving an unrepresented claimant, to develop the record and The Third Circuit has stated "if a claimant is pro se at an

---

need not necessarily arise through inconsistencies between the DOT and a question to the VE. As *Zirnsak* says, the inconsistency may be raised through "other evidence" in the case. *Id.* As in *Zirnsak*, the ALJ here fulfilled his duty to ask the VE whether there were

14

administrative hearing, the ALJ must assume a more active role, and must develop the record with special care." *See Snelson v. Colvin*, No. 2:13-cv-6695, 2015 WL 5883127, at *5 (Aug. 18, 2015) (citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)); *see also Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981) ("Particularly where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care."). The ALJ also has a duty to clarify vague testimony. *See Gauthney v. Shalala*, 890 F. Supp. 401, 410 (E.D. Pa. 1995). This heightened requirement is designed to protect the rights of pro se individuals appearing before the Social Security Administration.

      As for the third *Zirnsak* factor, it is not clear from the hearing testimony whether the VE meant that the jobs he listed were exhaustive or merely representative. *See* R. at 53; *Zirnsak,* 777 F.3d at 618 (citations omitted). In *Zirnsak*, "the occupations listed by the VE were only 'a couple examples' of jobs available to *Zirnsak*." 777 F.3d at 619 (citing *Simpson*, 2011 WL 1883124, at *7). In this record there is nothing explicit indicating whether the jobs identified by the VE[7] were just "a couple examples" of jobs available to Beard, or were the only jobs he could do. R. 53.

      My review of the medical evidence in this case convinces me that remand is appropriate. *McHerrin v. Astrue*, No. 09-2035, 2010 WL 3516433, at *7 (E.D. Pa. Aug. 31, 2010). Here, the ALJ did not credit the treating physician's report, and Dr. Croyle's opinion, heavily relied on by the ALJ, happens to be the source of the potential conflict.

---

any inconsistencies between the jobs the VE had identified and DOT job descriptions. R. at 53. The fulfillment of that duty did not clear up the issue raised by the plaintiff.

15

The ALJ did not provide a caveat, when relying on Dr. Croyle's opinion, explaining how the ALJ dealt with the limitation to following very short and simple instructions. As the ALJ noted, Dr. Croyle is experienced in Social Security matters. R. 24. I expect Dr. Croyle's language was not chosen casually, but with awareness of its potential significance. Nor is there other opinion evidence in the record that focuses on the issue or contradicts Dr. Croyle's assessment.

Reviewing this record I cannot tell whether the limitation in Dr. Croyle's report disqualifies plaintiff from the unskilled positions that the ALJ identified in the national economy. Those jobs all required reasoning levels greater than 1, which seems on its face to be the best "fit" for the language in Dr. Croyle's opinion. In fairness to the very thorough ALJ, the issue was not raised explicitly before him.[8] In fairness to the plaintiff, he was unrepresented below. Balancing the several factors identified in *Zirnsak*, I find that remand is appropriate.

### B. The ALJ' mischaracterization of Beard's testimony was harmless.

In summarizing Beard's testimony, the ALJ wrote that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 22. Two pages later the ALJ stated that Beard "credibly testified that he is not searching for work solely due to his remote housing and lack of transportation, that is, for reasons unrelated to his

---

[7] These jobs included roles as a cleaner, stores laborer and mail clerk. R. 26.
[8] Because the Social Security hearing system is non-adversarial, the rigorously enforced contemporaneous objection requirements applicable in an adversarial system do not apply. *See, e.g., Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 665 (1983).

mental health." R. 24. Beard did testify to other reasons for his lack of an active job search. That testimony describes a previous job with Verizon Wireless as a door-to-door salesman, a position where he was not keeping up, a job with Dollar Tree as a stocker that fell through because he couldn't follow directions, and an inability to work as a chemist because he was unable to work on a full-time basis. R. 43-44. Beard called these attempts at finding employment "abysmal failures." Pl. Br. at 14. Beard did not testify that he was not searching for work "solely due to his remote housing and lack of transportation," as stated by the ALJ. *Id.*

The Commissioner argues that the ALJ accounted for all of Beard's credibly established limitations while also providing adequate explanations for the credibility determination. *See* Def. Br. at 11. She cites to different medical records showing that, among other things, Beard did not follow up with outpatient care (R. 215-16), reported that he was doing better (R. 247), and reported that he was doing well in October of 2013. R. 238.

I would not recommend remand on this issue, standing alone. A review of the ALJ's opinion and the record convinces me that the ALJ carefully evaluated the available medical evidence and concluded that Beard's "statements concerning the intensity, persistence and limiting effects" of his symptoms were not borne out by the weight of the medical evidence. R. 22-24. That the ALJ incorrectly stated that the "sole[]" reason Beard did not search for work was his "remote housing and lack of transportation," does not convince me that the ALJ's overarching assessment of plaintiff's credibility was inaccurate.

17

However, given my recommendation that this case be remanded because of the reasoning level issue discussed in Section A, above, it is at least possible that the ALJ's estimation of plaintiff's credibility might change if the ALJ concluded that Dr. Croyle's opinion supports a finding that plaintiff only has a reasoning level of 1. The ALJ may reconsider this issue as he deems appropriate on remand.

### C. Remand is appropriate.

No opinion is perfect and the volume and complexity of Social Security cases makes it impossible for each opinion to address every contour of every argument. The ALJ's opinion in this case was careful and thorough. The potential discrepancy between the language of Dr. Croyle's opinion and the reasoning requirements of the jobs identified by the ALJ was not raised before him, a problem which likely contributed to the absence of facts in the record from which I could conclude that the error is harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 407-10 (2009) (harmless error analysis applied to review of an administrative determination); *McGraw v. Comm'r Soc. Sec.*, No. 14-4364, 2015 WL 1951892, at *2 (3d Cir. May 1, 2015) (applying harmless error in a Social Security case (not precedential) (citing to *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 122 (3d Cir. 2000)); *Albury v. Commissioner of Social Security,* 116 F. App'x 328, 330 (3d Cir. 2004) (same) (non-precedential) (citations omitted).

*Shinseki* identifies several non-exclusive factors that may influence the "case specific" inquiry whether an error is harmless: (1) "an estimation of the likelihood that the result would have been different," (2) "an awareness of what body . . . has the authority to reach that result," and (3) "a consideration of the error's likely effects on the

18

perceived fairness, integrity, or public reputation of judicial proceedings[.]" 556 U.S. at 411-12. In this case, whether the result would have been different depends on an evaluation of Dr. Croyle's opinion, which the ALJ took very seriously. I cannot say confidently whether the ALJ would dismiss or explain away that part of Dr. Croyle's opinion that created a potential discrepancy between Beard's reasoning level and the jobs available to him. As for the second *Shinseki* consideration, fact determinations are peculiarly within the province of the ALJ, and the issue here is fact intensive. Finally, the plaintiff was not represented below, which placed a special burden on the Commissioner and ALJ to develop the record. This weighs heavily on my estimation of "the error's effects on the perceived fairness . . . of the . . . proceeding." *Id.*

Because I cannot say, "with fair assurance, after pondering all that happened . . . that the judgment was not substantially swayed by the error," *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946), I am convinced that this case should be remanded. Accordingly, I make the following

## R E C O M M E N D A T I O N

AND NOW, on February 26, 2016, I respectfully recommend that Beard's request for review be GRANTED

Parties may object to this report and recommendation under 28 U.S.C. 636(b)(1)(B) and Local Rule of Civil Procedure 72.1 within fourteen (14) days after being served with the report and recommendation. An objecting party shall file and serve written objections that specifically identify the portions of the report or recommendations to which objection is made, and explain the basis for the objections. A party wishing to respond to objections shall file a response within 14 days of the date the objections are served.

BY THE COURT:

*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE